# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| INTERNATIONAL UNION UNITED ) <br> AUTOMOBILE AEROSPACE AND ) <br> AGRICULTURAL IMPLEMENT ) <br> WORKERS OF AMERICA (UAW), and ) <br> its LOCAL UNION 1368, ) <br> ) <br>       Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> BREMEN BEARINGS OF RBC USA, ) <br> INC., ) <br> ) <br>       Defendant. ) | CAUSE NO. 3:06-CV-603 PPS |

## OPINION AND ORDER

The Plaintiff Union filed this action to compel Bremen Bearings, Inc. to arbitrate a dispute over Bremen's obligation to pay certain retiree benefits. In March 2004, Bremen reduced the amount of money it was paying towards retirees' Medicare supplemental insurance premiums. The Union filed a grievance on behalf of Bremen retirees arguing that the reduction in contributions violated the parties' collective bargaining agreement. The parties never resolved the grievance and when the Union submitted the matter to arbitration, Bremen denied that the grievance was arbitrable. This suit to compel arbitration is before me on cross motions for summary judgment. I find that the grievance is arbitrable, but only as it pertains to Bremen employees who were active as of the date of the grievance.

**FACTUAL BACKGROUND**

The Union represents hourly production and maintenance employees at Bremen's Plymouth, Indiana facility. (DE 3 at 2.) Bremen and the Union are parties to a series of collective bargaining agreements that became effective on July 17, 1999, August 10, 2002, and October 30, 2005. (*Id.* at 3.) The CBAs govern the terms and conditions of employment for (with some exceptions), "all production and maintenance workers engaged on jobs at the Bremen, Indiana plant who are on an hourly or incentive basis." (DE 24-3 at 5; 24-5 at 6; 24-7 at 6.)

The 2002 and 2005 CBAs require Bremen to "pay the cost of Medicare supplemental insurance premiums, up to $100 monthly" for employees who retired or will retire during the terms of those agreements. (DE 24-6 at 5; DE 24-8 at 5.) Bremen must also pay these premiums "up to $234.14" for employees who retired during the 1999 CBA. (DE 24-4 at 1.) In March 2004, Bremen reduced its monthly contributions to retirees' Medicare supplemental insurance premiums to $50. (DE 3 at 3.) On April 1, 2004, the Union filed a grievance on behalf of "Local 1368 RBC Retirees" protesting Bremen's reduction in payments. (DE 1-5.)

By October 2005, the parties were engaged in contract negotiations for a new CBA. (DE 3 at 4.) During these negotiations, the Union pointed out that the grievance had not yet been resolved. (*Id.*) In response, Bremen management sent an email to a union representative confirming that Bremen would "review the circumstances of the grievance relating to retiree benefits in a different venue rather than the contract negotiations." (DE 34-3 at 7.) In a follow up email, Bremen acknowledged "that the union has made multiple attempts to address the subject of the grievance. In that light,

2

we need to address the issue. We will not use the limits of the grievance deadlines as a defense." (*Id.* at 8.) The parties executed the new CBA on October 30, 2005 without resolving the grievance.

In March 2006, the Union advised Bremen that it was referring the grievance to arbitration. (DE 24-2 at 3.) The grievance procedure under the CBAs culminates in final and binding arbitration. (DE 24-3 at 22-23.; 24-5 at 29-30; 24-8 at 1-2.) A grievance is defined under each of the agreements as "any dispute between [Bremen] and the Union over the compliance with or application of this Agreement as it pertains to any bargaining unit employee." (*Id.*) Only issues that "involve[] the meaning, application of, or compliance with a specific provision of" the CBAs are arbitrable. (*Id.*) On May 10, 2006, Bremen's counsel informed the Union by letter that Bremen did not believe the dispute over Bremen's Medicare supplement payments was arbitrable under the CBA and that Bremen would therefore not submit the issue to arbitration. (DE 1-7.)

On September 26, 2006, the Union filed this suit under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, claiming Bremen violated the CBAs by refusing to arbitrate the grievance. The Union therefore seeks an order compelling arbitration.

## DISCUSSION

Bremen argues that the Union does not have standing to represent retirees and that the grievance is not ripe as to active employees because it involves future benefits that have not yet vested. The Union disputes both of these arguments and also contends that Bremen's representations during the 2005 CBA negotiations amounted to an agreement to resolve the retirees' grievance through the Union. Both parties seek

3

summary judgment.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case on which that party will bear the burden of proof at trial. A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, a court construes "all facts and draws all inferences in the light most favorable to the non-moving party." *McCoy v. Maytag Corp.*, 495 F.3d 515, 520 (7th Cir. 2007).

The question before the Court is narrow. I must determine whether or not the grievance is governed by the terms of the CBAs. "To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed in arbitration." *Zurich Am. Ins. Co. v. Watts Indus, Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). Thus, I must decide whether or not Bremen is bound to arbitrate, as well as what issues it must arbitrate. *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986). This is done by construing the terms of the contract entered into by the parties. *Id.* There are strong policy considerations favoring arbitration, and so any ambiguity in the scope of an arbitration clause is resolved in favor of arbitration. *Volt Info. Sci., Inc. v. Board of Trs. of Leland Standford, Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

4

The arbitration clause in this case is broad in scope. It provides for arbitration over any unresolved grievance concerning "compliance with or application of [the agreements] as it pertains to any bargaining unit employee." (DE 24-3 at 22-23.; 24-5 at 29-30; 24-8 at 1-2.) This includes any dispute over the "meaning, application of, or compliance with" a provision of the agreements. (*Id.*) Bremen's obligation to contribute a designated amount towards retirees' Medicare supplemental insurance premiums is governed by the CBAs. Therefore, a dispute over the meaning of that obligation is squarely within the scope of the arbitration clause.

The problem here is that the Union seeks to arbitrate the grievance on behalf of "Local 1368 RBC Retirees." The CBAs do not provide a grievance procedure for retirees – only for *bargaining unit* employees. The Supreme Court has held that retirees are not part of the bargaining unit with respect to an employer's collective bargaining obligations under federal labor law. *Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 172 (1971). This is so "even in a case where an employer modifies benefits that were originally established through collective bargaining." *Rossetto v. Pabst Brewing Co., Inc.*, 128 F.3d 538, 539-40 (7th Cir. 1997). The Union nonetheless asserts that it has standing to pursue the grievance on behalf of retirees because at least 20 former Bremen employees authorized them to do so in writing. (DE 34-3 at 9-29.) And it argues that Bremen agreed in its email to the Union to deal with the Union in resolution of the grievance. Even if this were true, there is no evidence that Bremen agreed to *arbitrate* retirees' claims. Where parties have not agreed

to arbitrate a dispute, I cannot compel them to do so.[1]

Bremen also contends that the grievance is not ripe as to active employees because their rights to future benefits have not yet vested. But employees do not have to wait until they retire to challenge an employer's changes to their retirement benefits. *See Pittsburgh Plate Glass*, 404 U.S. at 159 (holding that an employer's midterm unilateral modification of pension benefits affecting active employees constitutes an unfair labor practice); *Independent Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233, 237 (7th Cir. 1993) (affirming district court's order compelling arbitration of a grievance over changes to a retirement plan by an active employee considering retirement). Active employees, particularly ones who are about to retiree, have a present interest in knowing what benefits they will receive in retirement. Moreover, the CBAs broadly permit arbitration of any dispute over the meaning of a CBA provision. Therefore, active employees are entitled under the agreements to a clarification of their future retirement benefits through the grievance procedure.

As a final point, the Union may arbitrate the grievance on behalf of former Bremen employees who were active as of the date the grievance was filed but have since retired. Since the resolution of the grievance was delayed through the mutual actions of the parties, Bremen is estopped from now asserting that it has no obligation to arbitrate the dispute as to these individuals. *Schweizer Aircraft Corp. v. Local 1752, Int'l Union,*

---

[1] That is not to say the retirees' are without remedy. They can sue Bremen individually, or as a class, for breach of contract, violation of federal labor laws, or any other theory available to them. *See Pittsburgh Plate Glass*, 404 U.S. at 182 n.20 (1971). They just cannot resolve their dispute by arbitration unless Bremen agrees.

*United Auto., Aerospace & Agric. Implement Workers of Am.*, 29 F.3d 83, 87 (2d Cir. 1994).  Accordingly, I find that the grievance is arbitrable insofar as it pertains to Bremen employees who were active as of the date of the grievance.

## CONCLUSION

Plaintiffs' Motion for Summary Judgment [DE 32] and Defendant's Motion for Summary Judgement [DE 23] are each **GRANTED IN PART AND DENIED IN PART**.  The parties are **ORDERED** to submit the grievance to arbitration consistent with this opinion.  Plaintiffs' Motion to Compel [DE 17] and Defendant's Motion to Strike [DE 42] are **DENIED AS MOOT**.

**SO ORDERED**.

ENTERED: September 8, 2008

 s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
